IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PETHEIA PRYOR-BAUCOM                                                  PLAINTIFF

vs.                           Civil No. 6:12-cv-06074

CAROLYN W. COLVIN                                               DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Petheia Pryor-Baucom ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 6.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

1.      **Background:**

Plaintiff protectively filed her DIB and SSI applications on February 25, 2009. (Tr. 11, 110-116). Plaintiff alleges being disabled due to the following: "Degenerative Disc Disease, Fibromyalgia, Low IGG & IGC levels (immunities), Osteoarthritis, Anxiety Disorder, Depression, Neuropathy." (Tr. 146). Plaintiff claims these impairments result in the following limitations:

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

> Fatigue; I cannot sit or stand for long periods of time; I cannot lift/push/pull. I have pain all over; I have knots and muscle spasms. I have problems gripping with my left hand. I have to write everything down in order to try and remember things. I do not have a good short term memory. The more tired I get, the more problems I have with cognitive thinking. I have problems finding the right words.

(Tr. 146). Plaintiff originally alleged an onset date of May 25, 2006 but later amended that alleged onset date to January 1, 2008. (Tr. 11, 146). These applications were denied initially and again upon reconsideration. (Tr. 57-60).

Thereafter, on December 23, 2009, Plaintiff requested an administrative hearing on her applications. (Tr. 74-75). This hearing request was granted. (Tr. 78-83). Plaintiff's administrative hearing was held on July 27, 2010 in Hot Springs, Arkansas. (Tr. 31-56). Plaintiff was present and was represented by Linn Reed. *Id.* Plaintiff and Vocational Expert ("VE") Tyra A. Watts testified at the hearing in this matter. *Id.* During this hearing, Plaintiff testified she was forty-six (46) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008) (DIB) and 20 C.F.R. § 416.963(c) (2008) (SSI), and had obtained her bachelor's degree in elementary education. (Tr. 34).

On October 19, 2010, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 8-24). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2014. (Tr. 13, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2008, her amended alleged onset date. (Tr. 13-14, Finding 2). The ALJ determined Plaintiff had the following severe impairments: fibromyalgia; degenerative disc disease; lower back pain; neck pain; radiculitis; chronic pain syndrome; chronic fatigue; carpal tunnel syndrome; hypogammaglobulinemia (possible Common Variable Immune Deficiency (CVID)); recurrent upper respiratory infections; depressive

disorder; and anxiety disorder, not otherwise specified. (Tr. 14, Finding 3). The ALJ determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 14-15, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 15-24, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she can lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to sit 6 hours in an 8-hour workday and the ability to stand and/or walk 6 hours in an 8-hour workday. However, claimant would have the ability to perform semi-skilled work where interpersonal contact is routine but superficial; complexity of tasks is learned by experience and several variables; uses judgment within limits; and requires little supervision of routine tasks but detailed supervision for non-routine tasks.

*Id.*

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 24, Finding 6). The VE testified at the administrative hearing regarding this issue. (Tr. 24, 53-56). Based upon that testimony, the ALJ determined Plaintiff could perform her PRW as a teacher aide II, general clerk, and customer service clerk. (Tr. 24, Finding 6). Because Plaintiff retained the capacity to perform her PRW, the ALJ determined Plaintiff had not been under a disability as defined in the Act from January 1, 2008 through the date of his decision or through October 19, 2010. (Tr. 24, Finding 7).

Thereafter, on December 20, 2010, Plaintiff requested the Appeals Council's review of the ALJ's unfavorable decision. (Tr. 7). On April 5, 2012, the Appeals Council declined to review this unfavorable decision. (Tr. 1-3). On May 30, 2012, Plaintiff filed the present appeal. ECF No. 1.

3

The Parties consented to the jurisdiction of this Court on July 3, 2012. ECF No. 6. Both Parties have filed appeal briefs. ECF Nos. 10-11. This case is now ready for decision.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that

his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3.     **Discussion:**

In her appeal brief, Plaintiff raises the following arguments for reversal: (1) the ALJ improperly determined her impairments did not meet the requirements of Listings 1.02(a)(b)(d) and 1.04; (2) the ALJ erred by failing to fully and fairly develop her vocational profile; (3) the ALJ did not give proper consideration to her chronic pain; (4) the ALJ erred in discrediting her physicians' opinions; and (5) the ALJ erred in failing to consider her mental impairments and non-exertional limitations. ECF No. 10 at 1-20. In response, Defendant argues Plaintiff did not carry her burden of proving that her impairments met or equaled the requirements of a Listing, substantial evidence

supports the ALJ's RFC determination, and Plaintiff did not carry her burden of proving she could not return to her PRW. ECF No. 11. Because the Court finds the ALJ erred in evaluating Plaintiff's medical records, the Court will only consider Plaintiff's fourth argument for reversal.

    **A.      Plaintiff's Medical Records**

Plaintiff's treatment records begin in 2002 and date until 2010 when the ALJ issued his decision. These medical records are extensive and complicated. In June of 2002, Plaintiff was diagnosed as having left nerve root compression at C5-6 and C6-7. (Tr. 219-220). Her physician recommended surgery, and she underwent surgery. (Tr. 221-223). She suffered severe postoperative pain and was placed on Morphine. (Tr. 223). In July of 2004, she reported suffering from neck pain "radiating into the left upper extremity." (Tr. 227-228). She underwent an MRI. (Tr. 228). She was found to have a left paramedian to foraminal disc protrusion at the C6-7 level, mild to moderate left foraminal narrowing at the C5-6 level, and mild left foraminal narrowing at the C4-5 level. *Id.*

From approximately 2005 until the present, Plaintiff received pain management treatment from Minimally Invasive Spine Medicine in Little Rock, Arkansas. (Tr. 374-451, 531-546, 555-558, 597-607). This treatment was primarily pain medication management, and Plaintiff was prescribed a number of strong pain medications from this office. *Id.* On January 12, 2010, Dr. M. Carl Covey, M.D., Plaintiff's physician at Minimally Invasive Spine Medicine, completed a medical source statement and found Plaintiff incapable of performing even sedentary work. (Tr. 555-558).

In May of 2005 and June of 2005, Plaintiff was examined by her treating physician, Dr. P. Timothy English, M.D. for atypical abdominal pain. (Tr. 287-288). She was referred to Dr. John W. Webb, M.D. and was found to have gallstones. (Tr. 260-261). In June of 2005, Plaintiff underwent surgery to have her gallbladder removed. (Tr. 289-290, 304-306, 342-346). In September

of 2005, Plaintiff was treated for chronic constipation, which her treating physician, Dr. English, believed to be "most likely . . . secondary to her pain meds." (Tr. 284).

In January of 2006, Plaintiff was examined by her treating physician, Dr. English, for depression, chronic pain syndrome, cervical disc disease, possible steroid withdrawal, fatigue, and insomnia. (Tr. 283). Plaintiff was prescribed Lexapro. *Id.* Also during that month, Plaintiff was examined by Dr. English for "episodic chest pain." (Tr. 282). She was found to have atypical chest pain and was diagnosed with hypertension (uncontrolled). *Id.* During that month, Plaintiff underwent an MRI of her cervical spine and lumbar spine. (Tr. 229-230). In her cervical spine, Plaintiff was found to have mild degenerative changes of C5-6 and C6-7 levels with no significant foraminal narrowing or vertebral canal stenosis and no disc herniations. (Tr. 229). In her lumbar spine, Plaintiff was found to have broad based disc bulges from annular tears at L4-5 and L5-S1, bilateral annular tears at L4-5 with questionable impingement upon the exiting nerve roots, and a left paracentral annual tear at L5-S1 with questionable touching of the exiting right nerve roots bilaterally by the broad based disc bulge. (Tr. 230-231). Finally, during that month, Plaintiff reported suffering from extreme fatigue and wanting to "sleep all the time." (Tr. 281).

In February of 2006, Plaintiff was examined by her treating physician, Dr. English, during a follow-up examination. (Tr. 280). During that appointment, Plaintiff reported her depression and fatigue had improved. (Tr. 280). In March of 2006, Plaintiff presented to the emergency room at St. Joseph's Mercy Health Center in a nervous state and was diagnosed with acute opiate withdrawal syndrome. (Tr. 340). In June of 2006, Plaintiff was evaluated by her treating physician, Dr. English, for rectal bleeding and chronic pain syndrome. (Tr. 277). Dr. English opined that Plaintiff's rectal bleeding was "probably from hemorrhoids." *Id.*

In September of 2006 and October of 2006, Plaintiff was evaluated by her treating physician Dr. English for chronic constipation and abdominal problems. (Tr. 375). Plaintiff was then referred to Dr. J. Steven Matthews who examined her and evaluated these problems. (Tr. 245-246, 334-339). Dr. Matthews found Plaintiff had a "history of chronic pain" and was taking "multiple . . . narcotic analgesics for pain control." *Id.* Dr. Matthews performed a colonoscopy and found Plaintiff's abdominal pain and constipation could be attributed to irritable bowel syndrome and "decreased gastrointestinal motility because of all of her pain medications she is taking." (Tr. 247-248). In December of 2006, Plaintiff was examined by her treating physician, Dr. English, and he also directed her to reduce her "high dose pain medications." (Tr. 273).

In March of 2007, Plaintiff underwent an MRI of her cervical spine and lumbar spine. (Tr. 331-332). With her lumbar spine, Plaintiff was found to have degenerative disk changes within the cervical spine, which are greatest at C5-C6, with uncovertebral joint hypertrophy, vertebral osteophytes, and associated with a bulging disk, resulting in narrowing of the neural foramina greater on the left. (Tr. 332). With her lumbar spine, Plaintiff was found to have a degenerative disc of L4-5 with disc desiccation with mild posterior bulging and facet hypertrophy but no significant central canal stenosis or neural foramina narrowing. (Tr. 331).

In February of 2008, Plaintiff was examined by rheumatologist Dr. James W. Logan, M.D. (Tr. 253-257, 365-369). She was referred to Dr. Logan by her treating physician, Dr. English. (Tr. 272). Dr. Logan found Plaintiff's symptoms consistent with fibromyalgia and prescribed her Lyrica. *Id.* In March of 2008, Dr. Logan examined Plaintiff during a follow-up appointment and found she continued to have chronic pain syndrome and fibromyalgia symptoms. (Tr. 266, 362-364). He recommended she increase her dosage of Lyrica. *Id.*

8

Also in February of 2008, Plaintiff was diagnosed with appendicitis and underwent an appendectomy. (Tr. 262-263, 270-271, 301-303, 324-330). In March of 2008, after her surgery, she was examined by her treating physician, Dr. English. (Tr. 270). She reported suffering from postoperative abdominal pain and fever. *Id.* In August of 2008, she presented to the emergency room at St. Joseph's Mercy Health Center with abdominal pain, nausea, and vomiting. (Tr. 319-321). She was diagnosed with acute opiate withdrawal from her prescription pain medication and was released. (Tr. 320-323).

In February of 2009, Plaintiff presented to the emergency room at St. Joseph's Mercy Health Center with symptoms of pneumonia. (Tr. 315-318). Also during that month, Plaintiff was again examined by Dr. Logan for her fibromyalgia and chronic fatigue. (Tr. 360-362). He stated, "Unfortunately she has tried much of the medication regimens that have been useful in fibromyalgia. I do not have any other thoughts on further pharmacologic therapy." (Tr. 360). He referred to her an immunologist. *Id.* Plaintiff was sent by an immunologist, Dr. D.A. Lindley, M.D., on July 22, 2009. (Tr. 473-474). Dr. Lindley's impression was that Plaintiff had a "single illness with varying manifestations, including chronic pain and fatigue and fibromyalgia." (Tr. 474). Plaintiff's quantitative immunoglobulin levels were tested, and they were found to be "moderately low." (Tr. 475). Plaintiff was directed to seek follow-up treatment regarding to assess these low levels. *Id.* In December of 2009, she followed-up with Arkansas Children's Hospital for these low levels and received immunity treatment. (Tr. 551-552, 560-564). Plaintiff's current records reflect that she is continuing to take these treatments. (Tr. 571-592).

In August of 2009, Plaintiff was evaluated during a psychological consult by Shea Stillwell, Psy.D. (Tr. 477-485). Ms. Stillwell diagnosed Plaintiff with depressive disorder (not otherwise

9

specified) and anxiety disorder (not otherwise specified). *Id.* She found Plaintiff's GAF score to be 65. *Id.*

Throughout 2009, Plaintiff continued to receive treatment from Dr. English. In July of 2009, Plaintiff was assessed as having "severe fibromyalgia causing musculoskeletal pain." (Tr. 541). In August of 2009, Plaintiff presented to Dr. English with flu-like symptoms and was diagnosed as likely having the flu. (Tr. 513). In May of 2010, Plaintiff again presented to Dr. English for an assessment of her back pain. (Tr. 594). Dr. English ordered an MRI of her cervical spine and lumbar spine to assess the severity of her impairment. (Tr. 594-595).

**B.     ALJ's RFC Determination**

Based upon these medical records, the ALJ determined Plaintiff retained the capacity to perform a restricted range of light work. (Tr. 15-24, Finding 5). Such a restricted range includes the ability to "lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to sit 6 hours in an 8-hour workday and the ability to stand and/or walk 6 hours in an 8-hour workday." *Id.* In his opinion, the ALJ summarizes the medical records that he claims support his decision. (Tr. 15-24).

However, although the ALJ summarizes these medical records in his opinion, it is entirely unclear how he determined Plaintiff retained the capacity to perform a restricted range of light work. Indeed, in the record, the only treating source who provides an opinion as to Plaintiff's work limitations is Dr. Covey. (Tr. 22-23, 555-558). The ALJ, however, discounted his findings and determined those findings were not consistent with Dr. Covey's treatment notes and were "not fully supported by the weight of substantial evidence." (Tr. 22-23).

The ALJ also references the opinions of Plaintiff's other treating physicians–including Dr.

English, Dr. Logan, and Dr. Lindley–and states that he gives their opinions "significant weight." (Tr. 22). It is, however, unclear which opinions of which doctors he gives any "significant weight." Interestingly, the ALJ also states he relies heavily upon the opinions of the nurse practitioners who treated Plaintiff at Minimally Invasive Spine Medicine, but, again, does not provide which of their opinions he finds credible. This finding is especially curious since both Dr. Covey and his nurse practitioners consistently prescribed Plaintiff a series of opiate-level pain medication over the course of five years. (Tr. 374-451, 531-546, 555-558, 597-607).

Further, in his opinion, the ALJ claims to evaluate Plaintiff's subjective complaints pursuant to the requirements of *Polaski*. *See Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). This evaluation, however, essentially consists of discounting her subjective complaints because they were "not borne out by the [medical] record." (Tr. 21). Such a determination was in error. *Polaski,* 739 F.2d at 1322 (holding subjective allegations should not be discounted "solely because the objective medical evidence does not fully support them [the subjective complaints]").

In this case, at the very least, Plaintiff has demonstrated herself to be somewhat credible because she has consistently sought treatment for her impairments, and there is no indication in the six-hundred-page record that she ever missed an appointment or failed to follow-up on treatment. Further, all of her impairments were medically documented by at least one physician, and, in most cases, her impairments were documented by several physicians. Plaintiff also demonstrated a repeated effort to keep working despite her impairments. (Tr. 35-38). Such factors certainly weigh in favor of her credibility.[2] Accordingly, because the ALJ erred in assessing her RFC and the

---

[2] Of course, there are other factors that may detract from her credibility. For instance, her medical records indicate she may have a dependence to pain medication. (Tr. 320-323). Thus, these are only a few findings that should be considered. Upon remand, the ALJ has the responsibility for fully evaluating these and other *Polaski* factors.

credibility of her subjective complaints, this case must be reversed and remanded.

**4.     Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 29th day of April 2013.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE